IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CECELIA A. COOK | Case CV 08-3073-CL |
| Plaintiff, | **ORDER** |
| v. | |
| UNITED AIRLINES, INC., | |
| Defendant. | |

CLARKE, Magistrate Judge.

    Plaintiff Cecelia Cook ("Plaintiff") filed this complaint against Defendant United Airlines ("Defendant") claiming that Defendant's negligent acts resulted in various personal injuries. Plaintiff is a resident of Oregon. Defendant is a foreign corporation incorporated in Delaware with a principal place of business in Illinois. The amount in controversy exceeds $75,000 as Plaintiff seeks approximately $11,300 in damages for medical costs and $350,000 in damages for pain and suffering. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

    Defendant has filed a motion for summary judgment (#26). For the reasons set forth below, the Court grants Defendant's motion.

Order  1

## I. Standards

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). Summary judgment should be

Order 2

granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

## II.    Facts

Plaintiff was a passenger on United Flight 308, which departed from Los Angeles International Airport on July 8, 2006 and arrived at Baltimore-Washington International Airport on July 9, 2006. (Def.'s Concise Statement of Material Facts ("Def.'s CSMF") ¶ 1; Compl. ¶ 6; Answer ¶ 1.) Plaintiff was seated in seat 21A. (Pl.'s Concise Statement of Material Facts Detailed Amended[1] ("Pl.'s CSMF") 2.) Plaintiff alleges that approximately twenty minutes west of Baltimore she received two electric shocks to her left forehead and above her left eye. (Compl. ¶ 6; Pl.'s CSMF 2.) Plaintiff alleges that these were shocks were 20,000 volts of electricity. (Pl.'s CSMF, Ex. 10, 4.) Plaintiff stated that she did not report the incident immediately to the flight crew because "she was in such a daze." (Pl.'s CSMF 2.) She reported, "the witnessing party picking her up at the airport, meet up with passengers from seat 21C who stated 'You look hurt!'" (Pl.'s CSMF 2.)

---

[1] Plaintiff cites to various exhibits throughout her CSMF. However, the Court was unable to locate many of the corresponding documents. It appears that some exhibits were either mis-filed or not filed at all. When an exhibit could not be found, the Court refers only to the Pl.'s CSMF as a reference.

Order   3

Plaintiff asserts that she contacted United shortly after the incident, although the exact date is unclear. (Pl.'s CSMF 2.) Plaintiff's notes indicate that by July 13, 2006, she was in contact with the Defendant. (Pl.'s CSMF, Ex. 1.) On this date, she had also contacted, via third party, a Manage Line Maintenance Network United Services employee who confirmed that it was possible to get shocked on an aircraft. (Pl.'s CSMF, Ex. 14.)

Plaintiff sought medical attention, which included MRI scans, a spinal tap, and visits with her primary care physician and several specialists, upon her return to Oregon. Due to scheduling conflicts, it was initially difficult for her to see a neurologist. (Pl.'s CSMF 2.) Plaintiff argues that the MRI scans and spinal tap "support the traumatic brain injury." (Def.'s CSMF 2.)

As a result of the alleged shock, Plaintiff asserts that she suffered from several personal injuries including "trauma to the forehead and left eye, trauma to the brain, loss of vision, headaches, partial neurological damage, damage to the language cortex structure, and lesions." (Pl.'s CSMF 2.) Plaintiff stated that a radiologist read the first MRI scan and stated that it shows "abominates and that something was wrong, for a person of the Plaintiff's age [sic]." (Pl.'s CSMF 2-3.) Plaintiff concluded,

> [t]his was evidence of serious injury and a further investigation reveals and confirms an injury that will never heal, and only get worst. The Plaintiff again was an extremely healthy individual, and thought and prayed that in time she would heal and get better. The Plaintiff will never get better; the injury is progressive in nature and will require medication for life, treatment for life, and the promise of failing health. The result of the injury will be extremely disabling for the rest of Plaintiff's life.

(Pl.'s CSMF 2-3.)

Order 4

### III. There Is No Issue of Genuine Fact as to Causation of Plaintiff's Injuries

Defendant moves for summary judgment, arguing that there is no genuine issue of material fact as to whether Defendant has caused Plaintiff's injuries. (Def. United Airline's Mem. in Supp. of Mot. of Summ. J. ("Def.'s Mem." 4.) Plaintiff asserts the following injuries: "trauma to the forehead and left eye, trauma to the brain, loss of vision, headaches, partial neurological damage, damage to the language cortex structure, and lesions." (Pl.'s CSMF 2.)

#### A. Plaintiff Must Show Medical Causation With Expert Testimony

Defendant argues that Plaintiff must show medical causation for her injuries by offering testimony of a qualified expert. Oregon law describes the plaintiff's burden in a negligence claim at summary judgment: "the plaintiff's burden includes presenting evidence of 'cause in fact' by showing either that the defendant's conduct was the 'but-for' cause of the plaintiff's harm or, in the case of multiple potential causes, that it was a 'substantial factor' in bringing about the harm." Magnuson v. Toth Corp., 221 Or. App. 262, 267, 190 P.3d 423 (Or. Ct. App. 2008) (citing Joshi v. Providence Health Sys., 342 Or. 152, 161-62, 149 P.3d 1164 (Or. 2006)). When injuries are complex and not a simple "cause and effect" correlation, expert testimony is required: "[i]t is, of course, the settled rule that where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by testimony of skilled, professional persons." Cleland v. Wilcox, 273 Or. 883, 887, 543 P.2d 1032 (Or. 1975) (citations omitted); see Chouinard v. Health Ventures, 179 Or. App. 507, 512, 39 P.3d 951 (Or. Ct. App. 2002). "If the issue turns upon some fact beyond the ken of laymen, expert testimony must be produced." Uris v. State Compensation Dept., 247 Or. 420, 424-25, 427 P.2d 753 (Or. 1967).

Order 5

An expert witness is "qualified as an expert by knowledge, skill, experience, training, or education [and] may testify theretofore in the form of an opinion or otherwise, if (1) testimony is based upon sufficient facts, or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably used to the facts of the case. " Fed. R. Evid. 702. Witnesses who are not experts may only testify as to "those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or to the determination of a fact at issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Neither party disputes the need for expert testimony. Plaintiff claims that an electric shock resulted in trauma, loss of vision, headaches, neurological damage, and damage to the language cortex structure. (Pl.'s CSMF 2.) This is not a simple cause and effect claim and is "beyond the ken of laymen. See Uris, 247 Or. at 424-25. Plaintiff has conceded that she will need expert testimony in her answered to Defendant's interrogatories: "I believe in order to clearly understand the magnitude and on going detestation with a 'Traumatic Brain Injury' TBI, often a misdiagnosis, I will need expert witness. An expert in Neuroradiology, and Imaging Research, Neurology, Neuropathology, Cognitive Neurology Research, Health Science, Neuroscience, Epidemiologist, and possibly other experts [sic]." (Def.'s CSFM ¶ 10; Decl. of Elizabeth M. Cline ("Kline Decl."), Ex. 3, 4.)

Defendant argues that Plaintiff has no expert testimony to prove causation. Plaintiff provided no medical records that confirm or suggest causation. From what the Court was able to locate and identify in the Plaintiff's exhibits, Plaintiff's medical records only discuss her

symptoms and various tests that were performed. In fact Dr. Ireland concluded in an April 9, 2009 letter to Plaintiff's physician Dr. Moisa, "[t]he etiology of Cecelia's symptoms and MRI abnormalities remains uncertain. . . . I cannot relate her continued shock like sensations nor her continuous pressure sensation in the head to the alleged electrical shock." (Pl.'s Ex. 27, 7.)

Much of what Plaintiff provided to Defendant was based on Plaintiff's Internet research. (Def.'s Mem. 8.) She based her conclusions of causation on her self-diagnosis:

> It would be impossible to answer accurately and determined the extent of each injury, illness, and condition without more testing, and the testimony of experts. Because of all new and ongoing symptoms, I have gone on line to have a better understanding and the possible treatment, testing and sequences of this injury, with all the new negative medical problems that I am experiencing. With my resent research I found that all of these symptoms are a results of the injury on the United flight [sic].

(Kline Decl., Ex. 3, 7.)

In addition to her medical self-diagnosis, Plaintiff also makes statements concerning the electric shock alleged to have caused the injuries, but these allegations have not been validated by experts and appear to be based on her own beliefs and conclusions. Specifically, Plaintiff has stated that she received a 20,000 volt electric shock, yet she has no data to support this. (Pl.'s CSMF, Ex. 10, 4.)

Viewing this evidence in the light most favorable to the Plaintiff, the Court concludes that Defendant has met its burden and demonstrated that Plaintiff has submitted no probative evidence that Defendant caused her injuries.

> **B.   Plaintiff Has Not Shown Medical Causation and Has Not Shown There Is a Genuine Issue of Fact**

To survive the summary judgment motion, Plaintiff must present specific facts on which

Order  7

a reasonable jury could find that Defendant caused her injuries, but she has not. In opposition to Defendant's motion, Plaintiff describes her perception of the alleged incident, and her alleged injuries, but she has not provided expert testimony discussing how Defendant's negligent acts caused her harm.

It appears that Plaintiff has sought experts to assist her. In a letter addressed to the Court dated April 30, 2009, Plaintiff explained that she had identified an aviation aeronautical engineer as well as at least two medical doctors who are experts on trauma to the brain. (Pl.'s April 30, 2009 Letter.) Plaintiff presented the curriculum vitae of William P. Thorwatch, P.E., an electrical, mechanical, and aviation investigative engineer as well as the Internet biography page from the University of Chicago Medical Center of Dr. Raphael C. Lee, a professor of surgery, medicine, organismal biology and anatomy, and molecular medicine. (Pl.'s CSMF, Ex. 15 &17.) However, at the time of filing, Plaintiff did not provide their testimony to support her claim. Identifying potential experts is not enough at this stage of the litigation.

Plaintiff has filed numerous documents with the Court, but upon review the Court does not find there to be a genuine issue of material fact. It is clear that Plaintiff has gone to great lengths to research the issues that she believes are involved. In her CSMF, she cited several Federal Aviation Regulations, submitted airline squawk sheets, accident reports, and studies about the electrical wiring in airplanes, all of which undoubtedly required patience and persistence to locate and obtain.[2] (Pl.'s Mem. in Opp. to Mot. for Summ. J. ("Pl.'s Mem.") 2.)

---

[2] Plaintiff presented the following articles and reports: "National Transportation Safety Board Aircraft Wiring Testimony of Bernard Loeb" (CSMF Ex. 16, 4); "Aging Aircraft Applications" by LiveWire Test Labs, Inc. (CSMF Ex. 16, 15); "Federal Aviation Administration Service Difficulty Report Data" (CSMF Ex. 16, 9); "Wiring Inspections" by David Evans, Editor of Aviation Maintenance (CSMF Ex. 16, 16); "Static Electricity: An Ever-Present Danger" by Aviation Safety Maintainer (CSMF Ex. 18, 1).

However, none of these submissions address the issue of causation that is necessary at this stage to allow her to proceed. These scientific studies and accident reports do not specifically address what happened on her flight or evaluate the Plaintiff.

Plaintiff has submitted her medical records from physicians who have either examined or treated her. These records do suggest that she is suffering from various medical symptoms, but no doctor has confirmed or concluded that she suffered from an electric shock that caused her injuries. See Dr. Ireland's letter, supra III.A. In addition, references to the incident in the medical records only confirm that Plaintiff told the doctors what she believed happened. In restating Plaintiff's personal impressions in the medical records, the physicians are neither confirming nor denying her complaints and allegations.

Plaintiff has offered no specific facts that can suggest Defendant caused her injuries. She has not shown there is a genuine issue for trial.

### IV. Conclusion

Defendant moves for summary judgment arguing that Plaintiff has not presented medical causation for her injuries. Taken in the light most favorable to the Plaintiff, the Court concludes that there is no genuine issue of material fact. Defendant's motion is granted.

DATED this __17__ of June, 2009

Mark D. Clarke
United States Magistrate Judge

Order 9